## LANIER *v.* THE STATE.

1. Where the evidence produced against a defendant in a criminal case is entirely circumstantial, and the court in charging the jury fully and accurately defines direct and circumstantial evidence, and further instructs them that the proved facts must not only be consistent with the hypothesis of guilt but must exclude every reasonable hypothesis save that of the guilt of the accused before they would be authorized to convict, it is not cause for a new trial that the court does not in express terms inform the jury that the prosecution relies altogether on circumstantial evidence to establish the guilt of the defendant.

2. Where a defendant is indicted for murder and the evidence affords no indication of any degree of homicide less than murder, and would sustain no verdict other than a finding of murder or an acquittal, an instruction to the effect that the lesser grades of homicide are not involved

in the case is not erroneous as excluding from the jury's consideration the defendant's guilt as an accessory after the fact.

3. Expert testimony is receivable as to the cause and manner of death. A non-expert witness who has observed certain marks on the lips and face of the dead body of an infant may give his opinion of their relation to the cause of death, after stating the facts.

4. An indictment charged two defendants (husband and wife) with the murder of their infant "by choking, strangling, and by beating and striking said baby boy with a certain instrument to the grand jurors unknown." An instruction that if the defendant on trial and his wife "were acting together in a common purpose, advising together and acting together, it would make no difference which one of them may have actually committed the crime; if they acted in concert with each other, it would make no difference whether this defendant or his wife actually struck the blow, or choked or smothered the child; each would be responsible, regardless of who may have struck the fatal blow," is erroneous and cause for new trial, on the ground that the indictment did not charge the defendant with causing death by smothering. (Two Justices dissent.)

NOVEMBER 13, 1913.

Indictment for murder. Before Judge Parker. Ware superior court. August 16, 1913.

*Andrew B. Estes* and *John S. Walker,* for plaintiff in error.

*T. S. Felder,* attorney-general, and *M. D. Dickerson,* solicitor-general, contra.

ATKINSON, J. The defendant and his wife were jointly indicted for the murder of their new-born babe. The defendant was separately tried and convicted, with a recommendation to mercy. The baby lived for an hour or two. The defendant contended that the baby died from natural causes, and the prosecution contended that death was produced by external violence. The manner of producing death, as charged in the indictment, was "by choking, strangling, and by beating and striking said baby boy with a certain instrument to the grand jurors unknown." At the time of the infant's death no one was present except one or both of the defendants, and the prosecution relied on proof of various circumstances to establish the corpus delicti and the defendant's guilt of the crime charged against him.

1. The defendant complains that the court did not in express words inform the jury that his guilt was sought to be established solely by circumstantial evidence, and that such omission requires the grant of a new trial. In his instructions to the jury the court gave full and accurate definitions of "direct evidence" and "cir-

cumstantial evidence," and in immediate connection charged them that, before they would be authorized to convict the defendant, the proved facts must not only be consistent with the hypothesis of guilt, but must exclude every reasonable hypothesis save that of the guilt of the accused. In view of these instructions we do not think this exception is meritorious.

2. The State submitted evidence tending to show that the death of the infant was due to acts of external violence inflicted by the defendant, or by his wife with his participation, for the purpose of causing death. The evidence afforded no ground for an inference of a lesser grade of homicide. Only one of two inferences is deducible from the entire record; i. e., that the defendant is either guilty or not guilty of murder. Inasmuch as the evidence showed, and it was admitted by the defendant, that immediately after death he hired a buggy and conveyed the dead body to a place where he buried it in the sand, it is complained that the court erred in an instruction to the effect that the lesser grades of homicide were not involved in the case, as excluding the possibility of the jury convicting him of being an accessory after the fact. On the trial of a defendant indicted as a principal he can not be convicted as being an accessory after the fact. *McCoy* v. *State, 52 Ga.* 287. This assignment of error is without merit.

3. The evidence tended to show that there were certain marks on the child's head, face, and neck. A non-expert witness was allowed to testify that he observed a red mark on the infant's lip, and also several marks on the lips and chin; and, from these facts, the witness was allowed to state his opinion that the child had the appearance of having been smothered. Objection was made to the witness's giving his opinion as to the cause of death. Medical men are permitted to give expert testimony upon many questions pertaining to the science and practice of medicine and surgery, such as the cause and manner of a decedent's death. It has been held that where the question is whether or not a person died from strangulation, testimony of medical experts may be taken. Williams v. State, 64 Md. 384 (1 Atl. 887). The appearance of the marks on the chin and lips, and their bearing as related to the features of the child in death, can not be adequately reproduced before the jury by a man of average intelligence from a mere statement of the facts; and the opinion of a non-expert witness, who describes the

facts, as to their relation to the cause of death, is receivable in evidence. *Taylor* v. *State,* 135 *Ga.* 622 (6) (70 S. E. 237). No objection to this testimony was offered the ground of an attempt to prove that the death was caused in a way different from that charged in the indictment.

4. Exception is taken to this charge: "If you find from the evidence and from the circumstances developed upon the trial that the child was murdered, and if that has been proven to your satisfaction to a moral and reasonable certainty and beyond a reasonable doubt, then you look to the evidence and the circumstances developed upon the trial of the case, and say whether or not the evidence satisfies your minds to a moral and reasonable certainty and beyond a reasonable doubt that this defendant was a party to that crime. If he and his wife were acting together in a common purpose, advising together and acting together, it would make no difference which one of them may have actually committed the crime; if they acted in concert with each other, it would make no difference whether this defendant or his wife actually struck the blow, or choked or smothered the child; each would be responsible, regardless of who may have struck the fatal blow." It is insisted that this instruction is erroneous, because the indictment contains no charge against the defendant of bringing about the death of his infant by smothering. The indictment charges the homicide to have been committed "by choking, strangling, and by beating and striking," etc.; and it is contended that death produced by strangling is brought about in a substantially different manner than that caused by smothering. We think this point is well taken. To smother is to stifle, to suffocate by stopping the exterior air-passages to the lungs; to strangle is to suffocate by a pressure or constriction of the throat. The jury may have believed under the evidence that the child was smothered and not strangled. This instruction permitted them to find the defendant guilty of murder accomplished in a manner not charged in the indictment.

Other errors complained of are without merit.

*Judgment reversed. All the Justices concur, except*

EVANS, P. J., and LUMPKIN, J., dissenting. We do not think that a new trial should be granted on account of the instruction contained in the fourth division of the opinion. The lexicons define both words to mean "to stifle, to suffocate." Death accom-

plished by strangling results from inability to inspire and expire air into and from the lungs, and death from smothering results from the same physiological cause. The charge in the indictment that death was produced by choking and by strangling indicates that strangling was not limited to suffocation produced by a constriction of the throat. While there may exist some technical difference in the terms, yet in common speech one is generally understood as the equivalent of the other. We do not think that the difference is so radical as to imply essentially different means of producing death.