76029. ALEXANDER v. THE STATE.
(368 SE2d 550)

BIRDSONG, Chief Judge.

David Alexander, appellant, brings this appeal from his conviction for the offenses of financial transaction card theft (OCGA § 16-9-31) and forgery (OCGA § 16-9-1). Alexander was indicted jointly with Angela Risner for both offenses. Risner had entered pleas of guilty to these offenses and testified against Alexander, without any agreement with the prosecution for her testimony. Risner stated that she and Alexander worked for the same employer and became friends. Eventually they decided to move into the same apartment and live together. Alexander denied sexual involvement, but Risner said she was in love with Alexander. Risner testified that Alexander came home one day with a Visa credit card belonging to Polly E. Hall. Alexander told her he had "found" it. The following day Risner took the card, went to the Roswell Road K-Mart and purchased a stereo. Risner stated that Alexander "said something about he wanted a new TV set so we just took the card and went back." Risner testified that Alexander picked out the TV set he wanted and was standing beside her when she signed Polly E. Hall's name to the sales slip, and used the Visa card to charge the purchase to Hall. They took the TV set home to their apartment. Other purchases were charged to the credit card and an investigator had no difficulty finding the address used by Alexander and Risner and recovering the goods obtained. The K-Mart employee who made the sale of the TV set viewed a photo lineup and selected out of it the photographs of Alexander and Risner.

Alexander denied being present at the time of the forgery and has no plausible explanation of how the sales clerk identified him, except that he was in the store and was on crutches. However, it was pointed out to him that the photographs used in the lineup did not

show any crutches. Neither does Alexander have any "idea or recollection where the [credit] card came from." He testified that his "financial status is not to be questioned," for he had over $500 in his personal checking account and several thousand dollars in a savings account. The record shows that he advised the court "he was not able to hire a lawyer" and the judge appointed the public defender to represent him.

The versions of these events by Alexander and Risner are in conflict. The jury elected to accept the testimony of Risner. Alexander brings this appeal from the jury verdict of guilty. *Held*:

1. Appellant contends the verdict and judgment of guilty on both counts are contrary to the evidence and the law, and strongly against the weight of the evidence. Construing the evidence in favor of the verdict reached by the jury, as an appellate court is required to do (*Rutledge v. State*, 245 Ga. 768, 769 (267 SE2 199)), we find the evidence sufficient to enable any rational trier of facts to find the existence of the offenses charged, beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

2. Ineffective assistance of counsel is urged on appeal. Appellate counsel argues that "[w]itnesses were clearly available who could have been compelled to shed the light of truth upon the prosecution of David Alexander." The accused's counsel, at trial, foresaw the coming events and spread upon the record his representation and invited the court's inquiry into the adequacy of counsel's defense of the accused. Alexander was asked if he had "enough time to meet and discuss this case" with his counsel, and responded: "Yes." Counsel also asked Alexander if he "had any witnesses" he would get subpoenaed, but Alexander advised the court: "No additional witnesses I can think of right now other than my father and he is in court today." Counsel asked if Alexander wanted to make any statement concerning his representation, and whether they had sufficient discussion of the case. Alexander had no statement to make to the court and was satisfied with the amount of time with counsel. The trial court also clarified the record to show appellant's claim of indigency and counsel was appointed on November 7. Trial was set for November 17, but counsel advised the court that Alexander had told him of several witnesses he wanted subpoenaed and the court directed counsel to obtain the subpoenas. After the subpoenas were obtained from the clerk, Alexander decided "he didn't want to subpoena such witnesses after all." The court ascertained that the subpoenas were still "in hand," but counsel was advised by his client he had no wish to call additional witnesses. The court was unable to get a jury panel that day and postponed the trial for one more day. Trial was held on November 19, 1986. On appeal, appellate counsel avers this was "a sad commentary on the representation provided" appellant at trial, and "[w]itnesses were clearly

available" who could have "shed the light of truth" upon these offenses. The record does not support counsel's claims but establishes sufficient time, opportunity, and offer of assistance by the court and counsel to obtain witnesses, which offer was declined by appellant, in court.

"The accepted standard regarding ineffective assistance of counsel is 'not errorless counsel and not counsel judged ineffective by hindsight, but counsel . . . rendering reasonably effective assistance.' " *Pugh v. State*, 250 Ga. 668, 670 (300 SE2d 504). " 'The bench mark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " *Ford v. State*, 255 Ga. 81, 85 (335 SE2d 567). To prevail on a claim of ineffectiveness, a convicted accused must show (1) counsel's performance was deficient, i.e., was not reasonable under the circumstances, and (2) that this "deficient performance prejudiced the defense," i.e., that there is a reasonable probability, but for counsel's unprofessional errors, the result would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674). The record before us shows accused's defense counsel was aware that after the jury finished trying his accused, the accused would start trying him. Counsel attempted to forestall such a claim by airing any allegation of ineffectiveness before trial and before the judge. It cannot be said here that counsel failed to function in any meaningful sense as the State's adversary (*United States v. Cronic*, 466 U. S. 648 (104 SC 2039, 80 LE2d 657)) or that he failed to provide appellant with the opportunity to support his allegation of ineffectiveness before trial. The record does not support appellate counsel's claim of ineffectiveness of the trial defense counsel. *Cook v. State*, 255 Ga. 565, 579 (340 SE2d 891); *Pearson v. State*, 182 Ga. App. 239 (355 SE2d 470).

3. It is alleged that the trial court erred in charging the jury upon the issue of conspiracy. We find no error. Because the evidence showed the actual forgery of the sales slip was done by Risner, presumably because the fraudulent credit card was in the name of a woman, the trial court charged on parties to the offense (OCGA § 16-2-20) and conspiracy (OCGA § 16-4-8). Alexander and Risner were jointly indicted for these offenses, although not charged with the offense of conspiracy. Because the evidence tended to show they acted in concert, conspiracy may be proved though not alleged in the indictment. *Greene v. State*, 155 Ga. App. 222, 224 (270 SE2d 386); *Anderson v. State*, 153 Ga. App. 401, 403 (265 SE2d 299); *Simpkins v. State*, 149 Ga. App. 763, 768 (256 SE2d 63).

4. Appellant filed a motion for new trial alleging the general grounds. The motion was subsequently amended to add claims of ineffective assistance of counsel and newly discovered evidence. This

court has found no merit with the sufficiency of the evidence claim or the allegation of ineffectiveness of counsel at trial. The "newly discovered evidence" consisted principally of evidence of lack of credibility of Risner, and Risner's statements to those witnesses that the newly purchased items in the apartment belonged to her, and evidence of good character of Alexander.

It is incumbent upon a party moving for a new trial on the basis of "newly discovered evidence" (OCGA § 5-5-23), to show to the satisfaction of the trial court: (1) such evidence has come to movant's knowledge since the trial, (2) its recent discovery was not due to want of due diligence not acquiring the evidence sooner, (3) such evidence is so material that it would probably produce a different verdict, (4) it is not cumulative only, (5) the affidavit of the witness, or witnesses, has been produced for the court, or its absence accounted for, and (6) a new trial will not be granted if the only effect of the newly discovered evidence would be to impeach the credit of a witness. *Humphrey v. State*, 252 Ga. 525, 528 (314 SE2d 436); *Timberlake v. State*, 246 Ga. 488, 491 (271 SE2d 792). Counsel has labeled his motion as an "extraordinary motion for new trial." " 'Extraordinary motions for a new trial are not favored, and a stricter rule is applied to an extraordinary motion for a new trial based on the ground of newly available evidence than to an ordinary motion on that ground.' *Wallace v. State*, 205 Ga. 751 (2) (55 SE2d 145) (1949). Accord *Music v. State*, 244 Ga. 832, 833 (262 SE2d 128) (1979)." *Dick v. State*, 248 Ga. 898, 899 (287 SE2d 11). Here, the newly acquired evidence principally relates to good character of appellant, which is cumulative to that presented during trial, and evidence showing lack of credibility of Risner, which is specifically excluded as a basis for the grant of the motion. The remaining evidence is that Risner told witnesses that the newly acquired items in the apartment where she and Alexander lived were "hers." Appellant has a problem. He is attempting to show that this "new" evidence would produce a different verdict, because it would show that Risner was a "liar" and is not believable, but wants to convince the court to believe Risner when she says that the newly acquired items were "hers." It is difficult to support both sides of antagonistic inferences.

We will not consider this "newly discovered evidence" in isolation as to whether it would produce a different verdict, for even though it attacks the strength of the State's case, we will consider the weakness of the appellant's case. Risner testified that Alexander brought the credit card home. Alexander was asked: "How did you obtain the credit card? A. I did not obtain the credit card. Q. Well, where did it come from? A. I don't know. . . . Q. So it just materialized? A. What did? Q. The card. A. I have no idea or recollection where the card came from." In addition, Alexander defended on the

ground that he did not need a new TV — he had one at home, and his "financial status is not to be questioned" for he had "over $500" in his checking account at "Heritage Bank" and "several thousand dollars" in his savings account. In his sworn affidavit filed with the trial court, he *wrote* that he had in "checking or savings accounts or other deposits with any bank or financial institution" $40 in a checking account in the Heritage Bank. Of course, there may be a plausible explanation for the conflict in these sworn statements, but we concur with the trial court in its conclusion that such "new" evidence does not contradict the essential facts upon which appellant's conviction was based, i.e., he and Risner lived together and shared the same apartment where the TV and credit card were located, and that appellant was present during the commission of the forgery and was identified by the sales clerk as a participant.

We find this enumeration to be without merit.

*Judgment affirmed. Banke, P. J., and Beasley, J., concur.*

DECIDED APRIL 5, 1988.

*Gale W. Mull*, for appellant.

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, John M. Turner, Benjamin H. Oehlert III, Assistant District Attorneys*, for appellee.